# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | Ruben Castillo |
|---|---|---|---|
| CASE NUMBER | 02 C 4110 | DATE | 1/24/2003 |
| CASE TITLE | TIFFT, et al. vs. COMMONWEATH EDISON, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held and continued to 3/14/2003 at 1:30 P.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' motion to remand [17-1] is **DENIED**. Enter Memorandum and Opinion. Plaintiffs given until 2/24/03 to file an amended complaint. Defendants to respond by 3/21/03. Joint status report to be filed by 3/11/03. The case is referred to the assigned Magistrate Judge for an expedited settlement conference.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | 2 | |
| ✓ | Notices mailed by judge's staff. | | JAN 27 2003 date docketed | 15 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 1-24-03 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRY TIFFT, JIM CRUTCHFIELD, JUANITA DIXON, KARI-ANN DODGE, JUDY FRASCA, PAMELA HOLMES, GREGORY KENNEDY, STEVE LANE, PETER LIESER, TERRY McMAHON, GENE OEHLERT, THOMAS PIEPER, LAWRENCE PINCOMBE and DANIEL WHIPPLE, <br><br> Plaintiffs, <br><br> v. <br><br> COMMONWEALTH EDISON, an Illinois corporation and EXELON CORPORATION, an Illinois corporation, <br><br> Defendants. | CASE NO. 02 C 4110 <br><br> JUDGE WILLIAM J. HIBBLER |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, former utility workers, filed this action in state court against Commonwealth Edison ("Com Ed") and Exelon Corporation ("Exelon"), (collectively, "Defendants"), alleging wrongful termination in violation of the Electric Service Customer Choice and Rate Relief Law of 1997 ("Electric Service Law"), 220 ILCS 5/16-101 *et seq.* Defendants timely removed the case to federal court on the grounds that Plaintiffs' claims involve the analysis and interpretation of a collective bargaining agreement and thus arise under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Plaintiffs now move to remand these proceedings to Illinois state court pursuant to 28 U.S.C. § 1447(c), because, they contend, the Complaint alleges a pure state law claim. For the following reasons, Plaintiffs' motion to remand is denied.

15

## BACKGROUND

Defendant Exelon was formed after the parent company of Defendant Com Ed merged with Peco Energy in 2000. Plaintiffs were each employed at various facilities operated by corporate entities related to Defendants, and covered by a collective bargaining agreement ("CBA") between their Union and respective companies. However, the merger led to the closing of several Com Ed facilities. As a result, in July 2001, Plaintiffs were offered an opportunity to be laid off or accept a demotion to a lesser job at a lesser rate of pay. (Compl. at ¶¶ 20, 22-26, 28, 30, 32, 34, 36, 38, 40, 42).

According to the Complaint, several of the Plaintiffs were given as little as fifteen minutes in which to decide whether they would accept a severance benefit in exchange for waiving their right to be recalled under the CBA. (Compl. at ¶ 60).

On May 8, 2002, Plaintiffs filed this action in state court, contending Defendants' actions violated the Electric Service Law, in particular 220 ILCS § 5/16-128 entitled "Provisions related to utility workers during the mandatory transition period." In their Complaint, Plaintiffs specifically highlight the following sections of the statute:

> (b) The General Assembly finds, based on the experience in other industries that have undergone similar transitions, that the introduction of competition into the State's electric utility industry may result in workforce reductions by electric utilities that may adversely affect persons who have been employed by the State's electric utilities in functions important to the public convenience and welfare. The General Assembly further finds that the impacts on employees and their communities of any necessary reductions in the utility workforce directly caused by this restructuring of the electric industry shall be mitigated to the extent practicable through such means as offers of voluntary severance, retraining, early retirement, outplacement, and related benefits. Therefore, before any such reduction in the workforce during the transition period, an electric utility shall represent to its employees or their representatives a workforce reduction plan outlining the means by which the electric utility intends to mitigate the impact of such workforce reduction on its employees.
> 
> (c) In the event of a sale, purchase, or other transfer of ownership during the mandatory

> transition period of one or more Illinois divisions or business units, and/or generating stations or generating units, of an electric utility, the electric utility's contract and/or agreements with the acquiring entity or persons shall require that the entity or persons hire a sufficient number of non-supervisory employees to operate and maintain the station, division or unit by initially making offers of employment to the non-supervisory workforce of the electric utility's division, business unit, generating station and/or generating unit at no less than the wage rates, and substantially equivalent fringe benefits and terms of conditions of employment that are in effect at the time of transfer of ownership ... and said wage rates and substantially equivalent fringe benefits and terms of conditions of employment shall continue for at least 30 months from the time of said transfer of ownership unless the parties mutually agree to different terms and conditions of employment within that 30-month period. The utility shall offer a transition plan to those employees who are not offered jobs by the acquiring entity because that entity has a need for fewer workers.

Plaintiffs asked the state court to imply a private right of action under 220 ILCS § 5/16-128, and find that Defendants, by removing each of them from their utility jobs within thirty months of the PECO merger/acquisition, violated the rights guaranteed to utility workers by the Electric Service Law in the event of a workforce reduction by the Electric Service Law. (Compl. at ¶¶ 54, 58-59, 62).

On June 7, 2002, Defendants removed this action to federal court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185, contending Plaintiffs' allegations are governed by federal labor law. (Notice of Removal at ¶ 5). Defendants asserted that Plaintiffs were all covered by a CBA and various side agreements jointly negotiated by Defendants and Plaintiffs' Union with respect to any obligations imposed by the Electric Service Law. As such, Defendants maintained, to determine if the offers of demotion or layoff made to Plaintiffs or the subsequent loss of their jobs violated the Electric Service Law, the Court would be required to analyze and interpret the CBA and/or other agreements. *(Id.)* Before this Court, Plaintiffs challenge the removal, arguing that they seek nothing more than to have the Illinois state court imply a private right of action under the Electric Service Law; thus the CBA is not implicated and there is no basis for asserting federal subject matter jurisdiction over the present case.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . ." Subject matter jurisdiction over this action exists if a "federal question" is involved. *See* 28 U.S.C. § 1331.[1] Defendants say Plaintiffs' claims are completely preempted by § 301 of the LMRA, 29 U.S.C. § 185, while Plaintiffs contend their issues arise solely under Illinois law.

Defendants, as the removing parties, bear the burden of establishing that jurisdiction appropriately lies in the district court. *In the Matter of the Application of County Collector of Winnebago County*, 96 F.3d 890, 895 (7th Cir. 1996). To determine if federal-question jurisdiction is present, the Court follows the "well-pleaded complaint rule," and looks at whether "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar v. Williams*, 482 U.S. 386, 107 S. Ct. 2425, 2429 (1987). However, a plaintiff cannot avoid a federal forum by "artfully pleading" what is essentially a federal claim in terms of state law. *Commonwealth Edison Co. v. Int'l Brotherhood of Elec. Workers, Local Union No. 15*, 961 F. Supp. 1154, 1160 (N.D. Ill. 1996). *See also Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S. Ct. 2840, 2853 (1983) ("it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint"). Correspondingly, a defendant cannot create a federal question by asserting an issue of federal law as a defense. *Application of County Collector*, 96 F.3d at 895. *See also Com Ed*, 961 F. Supp. at 1160 ("[f]ederal issues which serve as a defense to a state law action . . . do not confer federal question

---

[1] Neither side has argued that diversity jurisdiction exists under 28 U.S.C. § 1332.

jurisdiction and therefore cannot serve as the basis for removal.").

## ANALYSIS

Defendants invoke the doctrine of "complete preemption," a well-established exception to the well-pleaded complaint rule, in support of removal. In situations where "a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd.*, 103 S. Ct. at 2854. Consequently, even if the complaint does not identify a federal question, federal subject matter jurisdiction will nonetheless be found to exist if the complaint concerns an area of state law that has been completely preempted by federal law. *See Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996).

Congress has given § 301 of the LMRA, which governs "suits for violations of contracts between an employer and a labor organization representing employees," such preemptive force. *Com Ed*, 961 F. Supp. at 1160. Section 301, then, preempts "claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on an analysis of a collective bargaining agreement'." *Caterpillar*, 107 S. Ct. at 2431 (citation omitted). As such, the key factor to be considered by this Court in determining if § 301 preempts Plaintiffs' state law claims here is "whether the resolution of the claim depends on the meaning of, or requires the interpretation of, a collective bargaining agreement." *Loewen Group Int'l, Inc.*, 65 F.3d 1417, 1421 (7th Cir. 1995).

Despite the broad preemptive effect of § 301, "[not] every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by § 301 or other provisions of the federal labor law." *Loewen*, 65 F.3d at 1421, *quoting Allis-Chalmers v. Lueck*, 471 U.S. 202, 105 S. Ct. 1904, 1911 (1981). Indeed, "when the meaning of contract terms is

not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 114 S. Ct. 2068, 2078 (1994). In other words, "when the collective bargaining agreement is merely a tangential consideration in the resolution of an otherwise independent state law action or where resort to its provisions is merely pro forma" § 301 preemption is not triggered. *Loewen*, 65 F.3d at 1422.

Plaintiffs maintain that although they are indeed parties to the CBA, the Complaint alleges an independent and distinct matter under the Electric Service Law that can be proven without any reference whatsoever to the CBA. The statutory provisions Plaintiffs identify in the Complaint as providing the basis for their claims state, in relevant part, that:

> (b) [B]efore any such reduction in the workforce during the transition period, an electric utility shall present to its employees or their representatives a workforce reduction plan outlining the means by which the electric utility intends to mitigate the impact of such workforce reduction on its employees.
>
> (c) In the event of a sale, purchase, or any other transfer of ownership during the mandatory transition period... the electric utility's contract and/or agreements with the acquiring entity or persons shall require that the entity or persons hire a sufficient number of non-supervisory employees... by initially making offers of employment... at no less than the wage rates, and substantially equivalent fringe benefits and terms and conditions of employment that are in effect at the time of transfer of ownership.... The utility shall offer a transition plan to those employees who are not offered jobs by the acquiring entity. . . .

220 ILCS § 5/16-128. *See* Compl. ¶¶ 59, 61-62. The Electric Service Law thus required that prior to implementing layoffs, Defendants present a workforce reduction plan, and that subsequent to the merger, Defendants either offer employment without a decrease in pay and benefits, or a transition plan to utility employees who would not be retained.

Plaintiffs allege that "the totality of the defendants' conduct and circumstances surrounding [their] and other similarly situated employees' removal from their jobs constitutes a wrongful

-6-

termination of [their] employment and a violation of their rights guaranteed by the [Electric Service Law], and in particular 220 ILCS § 5/16-128." (Compl. ¶62). Specifically, Plaintiffs claim they were all offered a layoff or demotion, and in some instances, given less than 15 minutes to decide if they would accept a severance benefit in exchange for waiving recall rights under the CBA. (Compl. ¶¶20, 22-26, 28, 30, 32, 34, 36, 38, 40, 42, 60). However, 220 ILCS § 5/16-128 imposes only one obligation on Defendants with respect to the hiring of non-supervisory employees after the merger, namely that the offer of employment entail no less than the wage rate, and substantially equivalent fringe benefits and terms and conditions of employment as are in effect at that time. Thus, contrary to Plaintiffs' assertions, in order to determine if Defendants' conduct violated the Electric Service Law, the Court must analyze the CBA to ascertain the wages, benefits and terms and conditions of employment Plaintiffs possessed prior to the merger. *See Com Ed*, 961 F. Supp. at 1163-64 ("The only thing the Illinois statute at issue in this case requires is that the employer honor the collective bargaining agreement. To decide whether he has done so necessarily requires interpreting that agreement.")

True, the Electric Service Law, unlike the Illinois successor law in *Com Ed*, *supra*, does not expressly reference the collective bargaining agreement. *Id.* at 1161-62. However, the language of 220 ILCS § 5/16-128(c), the basis for Plaintiffs' wrongful termination claims, clearly evinces an intent to ensure that displaced utility workers who are being hired by the acquiring entity receive, at a minimum, benefits equivalent to those provided under the collective bargaining agreement in place. Consequently, as in *Com Ed*, the Electric Service Law "creates no rights independent of the collective bargaining agreement itself." *Id.* at 1162.

Indeed, the Illinois statute does not prohibit, as Plaintiffs suggest, the reduction of utility employees within 30 months of a merger, or guarantee severance benefits to all laid-off workers.

Rather, it explicitly recognizes that workforce reductions may result from the restructuring of the electric industry, 220 ILCS § 5/16-128(b), and thus requires electric utilities to either offer affected employees jobs with comparable wage rates and benefits, or a transition plan, 220 ILCS § 5/16-128(c). Although Plaintiffs complain that Defendants violated the statute by offering them layoffs or demotions, and not allowing them sufficient time to consider their options, any rights they could assert under 220 ILCS § 5/16-128 are substantially dependent upon an analysis of their substantive rights that exist under the CBA. As such, § 301 of the LMRA is implicated. *See Com Ed*, 961 F. Supp. at 1164. Accordingly, in the present case, "the pre-emption rule [applies solely] to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." *Livadas*, 114 S. Ct. at 2078, *quoting Lueck*, 105 S. Ct. at 1911.

Plaintiffs' reliance upon *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 406, 108 S. Ct. 1877 (1988), is misplaced. There, the United States Supreme Court rejected the argument that § 301 preemption applied to a claim of retaliatory discharge merely because the factual questions pertaining to the resolution of plaintiff's grievance and state-law cause of action were the same. *Id.* at 1882. The Supreme Court reasoned that resolution of the state-law claim did not require construing the collective-bargaining agreement and thus the state law remedy was "independent" for § 301 pre-emption purposes. *Id.* Here, in contrast, as the Court has already noted, Plaintiffs' rights under the Electric Service Law, if any, are derived from the CBA. This Court's review of the legal issues therefore will extend beyond mere reference to the CBA for a damages computation, *Lingle*, 108 S. Ct. at 1885, n.12 (underlying state-law claim not preempted), to conducting a "substantive examination for the purposes of actually deciding the outcome of the action," *Loewen*,

64 F.3d at 1424. In other words, the Court would need to substantially depend upon provisions of the CBA when engaging in an analysis of Plaintiffs' state law claims. Therefore, the doctrine of complete preemption under § 301 applies to Plaintiffs' case, and the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See Com Ed*, 961 F. Supp. at 1164.

### Conclusion

Having found subject matter jurisdiction over this action properly lies within the federal courts, Plaintiffs' motion for remand is **DENIED**. Plaintiffs are hereby given thirty days to file an amended federal complaint.

**IT IS SO ORDERED.**

_____
RUBEN CASTILLO, DISTRICT JUDGE

**DATED:** January 24, 2003